**HOPLAND BAND OF POMO INDIANS,**
Plaintiff–Appellant,

v.

**The UNITED STATES,**
Defendant–Appellee.

Appeal No. 88–1085.

United States Court of Appeals,
Federal Circuit.

Aug. 30, 1988.

David J. Rapport, California Indian Legal Services, Ukiah, Cal., argued for plaintiff-appellant.

M. Alice Thurston, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With her on the brief were Roger J. Marzulla, Acting Asst. Atty. Gen., Martin W. Matzen and Glen R. Goodsell.

Before MARKEY, Chief Judge, RICH and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

The Hopland Band of Pomo Indians (Band) appeals the judgment of the United States Claims Court in *Hopland Band of Pomo Indians v. United States*, 13 Cl.Ct. 276 (1987), dismissing all of the counts of the Band's complaint as being either barred by res judicata, claims upon which the Band did not have standing to sue, or claims upon which relief could not be granted. The Claims Court also held that the complaint was not brought within the applicable statute of limitations, 28 U.S.C. § 2501 (1982). We conclude that each of the three counts of the Band's complaint is barred by section 2501. Since compliance with section 2501 is a prerequisite to the Claims Court's jurisdiction, we vacate the decision of the Claims Court addressing the merits and remand with instructions to dismiss the Band's complaint for lack of jurisdiction.

## BACKGROUND

The Hopland Rancheria, located in Mendocino County, California, was one of a number of small Indian communities (rancherias) in California, the land of which was held in trust by the United States for the resident Indians. However, in accordance with procedures set forth by Congress in the California Rancheria Act, Pub.L. No. 85-671, 72 Stat. 619 (1958) (as amended by Pub.L. No. 88-419, 78 Stat. 390 (1964)) (the Act), the trust relationship between the government and the resident Indians on various rancherias, including the Hopland Rancheria, was to be terminated and the trust property or proceeds from the sale of such property distributed to eligible individ-

ual Indians. *See generally Duncan v. United States,* 667 F.2d 36, 38–40, 229 Ct.Cl. 120 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983); *Smith v. United States,* 515 F.Supp. 56, 57–58 (N.D.Cal.1978). Under sections 1 and 2 of the Act, termination of an individual rancheria and distribution of its assets were to be carried out in accordance with a termination plan prepared by the Secretary of the Interior (Secretary) and approved by a majority of the adult Indians affected by the plan.

The Secretary approved a termination plan for the Hopland Rancheria on May 22, 1961, and a majority of the voting Indians of the Hopland Rancheria approved the plan on June 18, 1961. In accordance with section 10(b) of the Act, when the distribution of the rancheria's assets was completed, the Band's formal status as a Tribe was to be terminated, thereby ending the eligibility of its members for services and benefits provided by the government to such persons because of their status as Indians. However, in accordance with section 3 of the Act, no actual distribution of assets or proceeds to the individual distributees was to take place until the government reached agreement with the Indians of the Band on improvements to the water supply, sanitation, and irrigation facilities of the rancheria. While no agreement regarding such improvements was reached, the actual distribution of deeds to the assigned rancheria properties and of proceeds from the sale of other rancheria assets[1] nevertheless occurred and was completed by July 1967. At that time, the Band's status as a Tribe was formally terminated by the United States. Furthermore, following termination of the trust relationship, the distributed land became subject to state and federal laws and taxes.

In May 1974, Ellerick Smith, an individual distributee of the Hopland Rancheria, brought suit against the United States for injunctive and declaratory relief, alleging, *inter alia,* that the rancheria had been unlawfully terminated. Shortly thereafter, the government apparently realized that the termination of the Hopland Rancheria violated the Act due to the government's failure to reach any agreements regarding the necessary water and sanitation improvements prior to the distribution of the trust properties. In September 1974, the government acknowledged the continuing existence of its trust relationship with the Hopland Band in letters to each member of the Band.

Subsequently, in March 1978, on the basis of representations by the government to the district court in the suit brought by Mr. Smith, the court concluded that the purported termination of the Hopland Rancheria was unlawful, that the rancheria had not been terminated, and that the trust relationship of the United States toward the Indian people of the rancheria remained in existence. *Smith,* 515 F.Supp. at 59–60. The court further concluded that the Indian distributees of Hopland Rancheria lands were to be allowed to reconvey their land to the United States, provided that such land had not been conveyed to good-faith, non-Indian purchasers, and that any land reconveyed would be exempt from state and local taxation until the rancheria was legally terminated.[2] *Id.* at 61. Following that initial determination, the district court allowed a class representing Indian distributees and their heirs to intervene in the action on August 13, 1979. After a series of proceedings before a magistrate, the parties to that action stipulated a final

---

**1.** Included among the Hopland Rancheria properties was an unassigned or community-held parcel, referred to by the parties as Parcel 1, which contained approximately 1,440 acres of mountainous land. Parcel 1 was eventually sold to a hunting club for approximately $40,-000 and the proceeds from the sale were equally divided among the eligible distributees, resulting in a payment of approximately $800 each.

**2.** In a related case decided on the same record and reported at the same time, *Daniels v. Andrus,* the district court required the United States to conduct a referendum election to allow the resident Indians of the rancheria to decide whether the tribal water system should be returned to the United States as trustee, or retained by the Association which received title to the water system lands following the attempted termination of the rancheria. *Id.* at 61 & nn. 12–13.

judgment which was ordered entered by the district court on March 18, 1986.

During the course of the *Smith* litigation, in April 1980, the Bureau of Indian Affairs published a notice in the Federal Register which acknowledged its formal government-to-government relationship with the Band. 45 Fed.Reg. 27,820 (1980). According to the Band's complaint here, however, it was not until August 20, 1981, that the Indians of the Hopland Rancheria voted to adopt a constitution, which was necessary to create a governing body and authorize tribal officials to act on behalf of the Band. The Band itself was not a member of the certified class in the *Smith* case, although the Band did make a belated attempt to intervene, filing a notice of motion to intervene on April 7, 1986, which was denied.

The Band filed the present 3–count complaint in its own behalf in the Claims Court on September 3, 1986, seeking damages against the government for the premature and unlawful conveyance of the rancheria property held in trust for the Band by the government and for the denial of statutory benefits on the basis of the unlawful termination of the Band's tribal status. Specifically, Count I sought damages for breach of trust sufficient to allow replacement of Parcel 1 at current market prices. Count II sought the same damages on a different theory, alleging that by selling Parcel 1, a community asset, and dividing the proceeds only among the distributees, the government breached its duty to manage the trust for the benefit of all the trust beneficiaries, which included persons not classified as distributees. Count III alleged that the United States failed to provide benefits and services available to federally recognized Indian Tribes because of the government's unlawful termination of the rancheria and the Band's federal status. According to the complaint, since the Band retained its eligibility for such benefits and services until a lawful termination of the Hopland Rancheria could be accomplished, Count III sought damages to compensate for the full value of the lost benefits and services.

The Claims Court dismissed the Band's complaint, 13 Cl.Ct. 276, and this appeal followed.

## OPINION

### I.

As an initial matter, we observe that "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory." *United States v. Mazurie,* 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975) (citation omitted). Therefore, in proper circumstances, Indian tribes can be viewed as specific governmental and legal entities distinct from their members. *See, e.g., Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 468 n. 7, 96 S.Ct. 1634, 1639 n. 7, 48 L.Ed.2d 96 (1976). Thus, we assume for the purposes of this appeal that the Band, as a separate entity apart from its individual members, can pursue on its own behalf certain legal actions distinct and separate from similar or related claims of its members. *Cf. Fields v. United States,* 423 F.2d 380, 383, 191 Ct.Cl. 191 (1970) (distinguishing between claims brought by a tribe, band, or group of Indians and claims brought by individual Indians); *Table Bluff Band of Indians v. Andrus,* 532 F.Supp. 255, 260 n. 10 (N.D.Cal. 1981). Nevertheless, statutes of limitations are to be applied against the claims of Indian tribes in the same manner as against any other litigant seeking legal redress or relief from the government. *See United States v. Mottaz,* 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986); *Capoeman v. United States,* 440 F.2d 1002, 1007–08, 194 Ct.Cl. 664 (1971).

The parties here agree that the present action is governed by the statute of limitations set forth in 28 U.S.C. § 2501 (1982), which provides that "[e]very claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The 6–year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a

condition of the government's waiver of sovereign immunity and, as such, must be strictly construed. *See Spannaus v. Department of Justice*, 824 F.2d 52, 55 (D.C. Cir.1987) (discussing 28 U.S.C. § 2401(a)); *Jones v. United States*, 801 F.2d 1334, 1335 (Fed.Cir.1986) (the statute of limitations set forth in section 2501 is jurisdictional), *cert. denied*, —— U.S. ——, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987).[3] Exceptions to the limitations and conditions upon which the government consents to be sued are not to be implied. *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Furthermore, since the 6–year limitations period of section 2501 serves as a jurisdictional limitation rather than simply as an affirmative defense, such statutes of limitations have been held as "not capable of waiver or subject to an estoppel," whether pled or not. *See Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir.1972) (construing 28 U.S.C. § 2401(b)); *Mentis v. United States Postal Service*, 547 F.Supp. 164, 166 (W.D.N.Y. 1982) (statutes of limitations fixed by Congress cannot be waived by the acts of government agents).

It is generally stated that a claim "first accrues" when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action. *See, e.g., Japanese War Notes Claimants Association of the Philippines, Inc. v. United States*, 373 F.2d 356, 358, 178 Ct.Cl. 630, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). However, despite the apparent unavailability of waiver or estoppel, the statute of limitations can be tolled in proper circumstances, even in suits against the government. *See, e.g., Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (equitable tolling due to defendant's fraudulent concealment "is read into every federal statute of limita-

tion"); *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed.Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); *Barrett v. United States*, 689 F.2d 324, 329–30 (2d Cir.1982), *cert. denied, Cattell v. Barrett*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). Thus, the statute of limitations can be tolled where the government fraudulently or deliberately conceals material facts relevant to a plaintiff's claim so that the plaintiff was unaware of their existence and could not have discovered the basis of his claim. *Welcker*, 752 F.2d at 1580 ("the statute of limitations is tolled only so long as the plaintiff is unaware of the wrong committed"); *see Urie v. Thompson*, 337 U.S. 163, 169–70, 69 S.Ct. 1018, 1024–25, 93 L.Ed. 1282 (1949) (statute tolled if injury was "inherently unknowable"); *Holmberg*, 327 U.S. at 397, 66 S.Ct. at 585 (the statute does not begin to run until the defendant's fraud is discovered). However, it is not necessary that the plaintiff obtain a complete understanding of all the facts before the tolling ceases and the statute begins to run. *Japanese War Claimants*, 373 F.2d at 359 (also noting that the claims need not be substantiated by discovery of evidence before the statute can begin to run).

Thus, for the purposes of section 2501, it would appear more accurate to state that a cause of action against the government has "first accrued" only when all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence. *See Kinsey v. United States*, 852 F.2d 556, 557 n. * (Fed.Cir.1988) ("a claim does not accrue unless the claimant knew or should have known that the claim existed"). On the other hand, once the cause of action accrues and the statutory period starts running, Congress has explicitly provided a plaintiff 6 years in

---

**3.** Section 2401(a) parallels the provisions of section 2501, and provides, in pertinent part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." In a setting similar to the present case, it has been observed that "there is certainly no distinction between the companion statutes of limitations found at section 2401(a) and section 2501." *Walters v. Secretary of Defense*, 725 F.2d 107, 114 (D.C.Cir.1983), *reh'g denied*, 737 F.2d 1038 (1984). Aware of no reason to disagree with that observation for the purposes of this case, we rely in the following discussion on cases construing both sections without further differentiation.

which to file his action and no more. Since the 6–year period is also an express condition of the government's consent to be sued, courts are without jurisdiction to expand that period explicitly provided by Congress, at least on the equitable grounds of waiver or estoppel. *See, e.g., Henry Products Co. v. United States,* 180 Ct.Cl. 928, 930 (1967) (settlement discussions do not toll the statute once cause of action has accrued); *see also Mentis,* 547 F.Supp. at 166 (statutes of limitations fixed by Congress cannot be lengthened by estoppel). Although not always clearly stated or recognized in the "tolling" case law, the distinction that must be drawn is that between tolling the commencement of the running of the statute (a tolling of the accrual) and tolling the running of the statute once commenced (a tolling of the statute). In suits against the government brought under section 2501, the distinction can be critical because the former routinely is allowed while the latter rarely is.

## II.

While there is no dispute that the present complaint was governed by a 6–year statute of limitations period as set forth in section 2501, there is no shortage of disputes over when the Band's causes of action accrued and whether the statute of limitations should be tolled in light of the practical and organizational difficulties suffered by the Band as a result of the government's activities causing the unlawful termination of the Band's status as a federally recognized Indian tribe. Accordingly, the key issue becomes determining when the appellant's causes of action did actually accrue for the purposes of section 2501. Although the first two counts of the Band's complaint are styled as distinct allegations for breach of trust, both counts arise out of the same event, the allegedly improper conveyance of Parcel 1 by the government. For the purposes of determining when a cause of action arising from that alleged breach accrued, the analysis is the same. Therefore, we address the accrual of the first two counts together and address the accrual of the third count separately.

With respect to the accrual date of the Band's first two claims, the government argues alternatively that the Band's causes of action first accrued: in 1961, when the distribution plan became final; in 1964, when the sale of Parcel 1 was completed; in 1967, when the last deed to the rancheria land was distributed and the rancheria terminated; in 1974, when the government notified the members of the Band that the termination had been unlawful; in 1978, when the district court in *Smith* held that the termination had been unlawful; or in April 1980, when the government published its formal notice in the Federal Register of its resumed relationship with the Band. The government further argues that there is no legal basis upon which "to toll" the statute because the practical difficulties in bringing suit suffered by the Band are, as the Claims Court observed, "simply not cognizable as a legal disability." 13 Cl.Ct. at 282. Under the government's view, since the Band's complaint was not filed until September 3, 1986, which is beyond the 6–year period provided by 28 U.S.C. § 2501, the complaint is therefore barred regardless of which date above is determined to start the running of the statutory period.

■ The general rule is that the statute of limitations "does not run against a beneficiary in favor of a trustee until the trust is repudiated and the fiduciary relationship is terminated." *See Manchester Band of Pomo Indians, Inc. v. United States,* 363 F.Supp. 1238, 1249 (N.D.Cal.1973) (citing *United States v. Taylor,* 104 U.S. 216, 26 L.Ed. 721 (1881)). The rule would appear to be applicable in this case, even if subject to the qualification noted in *Jones v. United States,* 9 Cl.Ct. 292, 295 (1985) (rule not applicable to claims for misfeasance or nonfeasance as opposed to claims for recovery of the trust corpus), *aff'd on other grounds,* 801 F.2d 1334 (Fed.Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987), because Parcel 1, prior to its sale, was held in trust for the Band by the United States and therefore was part of the trust corpus. Here, we do not need to decide whether the sale of the

parcel in 1964 was sufficient to constitute a repudiation of the trust by the trustee inconsistent with its obligations under the trust, *see Jones,* 801 F.2d at 1336, since at least by 1967, all the events which would fix the alleged liability of the government had taken place when the trust was expressly terminated under the Act. Thus, regardless of whether all the events fixing liability occurred in 1964 or 1967, in the absence of tolling, the statutory period on the Band's claims would have run at least no later than 1973, well before its complaint was filed in 1986.

In support of its arguments for tolling, the Band protests the apparent unfairness of allowing the government to rely on the statute of limitations when the Band's practical difficulties in organizing and bringing suit allegedly stemmed from government actions. However, it is established that the government cannot be estopped from asserting the jurisdiction bar of section 2501 nor can the running of the statute on a claim against the government which has already accrued be suspended or extended. We therefore view the Band's arguments as directed toward tolling the initial accrual of its cause of action with respect to Parcel 1 rather than only to a suspension of the running of the statute once commenced. Thus, the determinative issue becomes whether the Band as an entity could be considered to be unaware of those events so as to toll the commencement of the running of the statute until less than 6 years prior to the filing of its complaint.

Under the Band's theory of the case in support of tolling, the revocation of the Band's constitution and corporate charter occurred in 1961 upon the approval of the distribution plan by a majority of the adult Indians, as provided in section 11 of the Act. The revocation had the effect of dissolving the tribal government, prior to the sale of Parcel 1 in 1964 and the termination of the rancheria in 1967, the acts giving rise to the causes of action of the present complaint. The Band alleges that knowledge of these acts by the Band could only have occurred after the Band's government was formally reorganized since the Band, as an entity, could not be aware of anything until its governing body actually was back in existence. In the Band's view, the causes of action stemming from the sale and unlawful termination cannot be deemed to have accrued until the Band itself was able to know of its injury and act to protect its interests.

In other words, it is the Band's position that by revoking its constitution and charter in 1961, the government effectively concealed from the Band the subsequent acts which resulted in injury to the Band, thereby preventing their discovery until the Band was able to reorganize. The Band argues that the earliest date on which such reorganization could be deemed to have occurred was when the Band adopted an interim constitution on August 20, 1981, a date within 6 years of the filing of its complaint. Thus, the key issue reduces to whether the commencement of the statutory period can be tolled for the entire period between 1961 and 1981 on the ground that the disablement of the Band's governing body upon revocation of the constitution and charter prevented the Band's knowledge of the events of 1964 and 1967 which gave rise to their specific claims.

### III.

We conclude that a tolling of the commencement of the statute of limitations on the Band's claims relating to Parcel 1 for the entire period from 1961 to 1981 is unwarranted. Acceptance of the Band's theory would require us to conclude that if the United States government had not voluntarily acknowledged that the termination of the Hopland Rancheria was improper, the Band was powerless to bring suit to prove a wrongful termination under the Act. *Cf. Menominee Tribe of Indians v. United States,* 607 F.2d 1335, 1345 & n. 22, 221 Ct.Cl. 506 (1979) (Court of Claims has jurisdiction to hear cases alleging violation of termination statutes), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980). But it makes little sense to conclude that the Band could only bring an action for wrongful termination once the government acknowledged the wrongful

termination because, at that point, the Band would no longer need to sue to prove that. In fact, if the Band's theory were adopted, once the termination of the trust and the Band's tribal status under the Act had actually occurred, the termination with respect to the Band would have become unreviewable and any resulting damage or loss would have become unrecoverable since the Band would not have been able to sue the United States government because the termination ended the Band's government as well. That simply cannot be the rule.

The Band's theory of its own disablement through revocation of its charter ignores the reality that it is through the knowledge of individual persons that comprise legal entities such as corporations or tribes that such entities gain the actual knowledge of the events which give rise to their potential causes of action. The termination of the Band's charter or the withdrawal of federal recognition did not affect the ability of the individual members to obtain knowledge and those individual members knew or should have known at least by 1967 all the facts which indicated that the sale of Parcel 1 was improper under the Act. Suits challenging the validity of tribal terminations have previously been filed on behalf of allegedly improperly terminated tribes. *See, e.g., Menominee Tribe of Indians v. United States*, 388 F.2d 998, 1000–01, 179 Ct.Cl. 496 (1967), *aff'd*, 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); *Affiliated Ute Citizens v. United States*, 199 Ct.Cl. 1004, 1004–05 (1972); *Table Bluff Band*, 532 F.Supp. at 260–61. We have been shown no valid reason why a similar suit on behalf of the Hopland Band of Pomo Indians could not have been brought to challenge the legality of its termination immediately following the improper termination occurring in this case.

The Band attempts to distinguish the above cases as situations where the government provided for or recognized a group or association of the terminated tribe to be the representative body of the tribe after the termination. However, the practical difficulties in organizing to bring suit, regardless of any increased difficulty resulting from a lack of federal impetus or assistance, are indeed "not cognizable as a legal disability" which would prevent the statute of limitations from running on a claim against the government over the sale of tribal assets following the unlawful termination of the trust. *See* 13 Cl.Ct. at 282. In fact, the prescribed 6–year period of section 2501 is the length of time which Congress has deemed as the reasonable time in which to overcome such difficulties and present one's claim and the period after which jurisdiction to hear the accrued claim is lost. *See United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979) (and cases cited).

Furthermore, the Band's own litigation experiences further undermine the Band's theory as to why suit could not have been brought sooner. The Band argues that the statute should be tolled until August 20, 1981, when it adopted an interim constitution providing membership criteria and elected a tribal council with delegated authority to act for the membership. Yet the government apparently considered the interim constitution insufficient to enable the tribal council to act on behalf of the Band. Nevertheless, the government's nonrecognition of the council did not prevent the present litigation or the Band's suit in which the Band and two other tribes obtained declaratory relief to compel the Secretary of the Interior to call for elections to ratify a formal constitution under the Indian Reorganization Act. *See Coyote Valley Band of Pomo Indians v. United States*, 639 F.Supp. 165 (E.D.Cal.1986). If such suits could be brought on behalf of the Band without formal government recognition or authorization of the tribal council, the present suit could have and should have been brought before 1973.

Thus, while formal recognition by the United States government may have been a prerequisite for the tribe to bring suit as a sovereign against third parties, it was not a prerequisite for bringing suit against the government over the withdrawal of that federal recognition. In other words, whatever infirmities the Band may have been under as a result of the revocation of its

constitution and charter should not have prevented the bringing of an action on behalf of the Band against the government as the entity allegedly responsible for creating those infirmities. We therefore conclude that the Band's claims arising out of the sale of Parcel 1 are time-barred under section 2501.

### IV.

While the wrong common to all of the Band's claims in this case was the unlawful termination of the Band's federal status, it would appear incorrect to conclude that all claims resulting from the termination of the Band as a tribe, including the termination itself, would be unreviewable unless challenged within 6 years of the termination date.[4] Although we concluded in the preceding discussion that the Band's claims with respect to Parcel 1 were barred by operation of the jurisdictional limitation set forth in section 2501, for present purposes, we assume that the unlawful termination of the Band's status could result in certain injuries which fall within the "continuing claim" doctrine, sufficient to remove claims for the resulting damages occurring within 6 years of the complaint from the bar of section 2501. *See, e.g., Burich v. United States,* 366 F.2d 984, 986–87, 177 Ct.Cl. 139 (1966) (discussing the doctrine as employed in pay cases), *cert. denied,* 389 U.S. 885, 88 S.Ct. 152, 19 L.Ed.2d 182 (1967); *Friedman v. United States,* 310 F.2d 381, 384–85, 159 Ct.Cl. 1 (1962) (where payments are to be made periodically, each successive failure to pay gives rise to a new cause of action, even where the grounds or basis for the refusal to pay took place or were enacted more than 6 years prior to the action), *cert. denied, Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

The rationale underlying the "continuing claim" doctrine, as its application was out-lined in *Burich* and *Friedman,* is that it prevents the defendant from escaping all liability for its wrong and thus "acquiring a right" to continue its wrongdoing, while retaining intact the 6–year statute of limitations set forth by Congress in section 2501. *See Mitchell v. United States,* 10 Cl.Ct. 787, 788 (1986), *modifying,* 10 Cl.Ct. 63 (1986). In *Duncan v. United States,* 667 F.2d 36, 48, 229 Ct.Cl. 120 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983), one of our predecessor courts ruled that the wrongful termination of an Indian tribe's federal tribal status could give rise to a monetary claim for lost benefits against the government if, apart from the illegal termination, the tribe could sue for an arbitrary or unlawful denial of such benefits. Assuming, without so deciding, that the statutory source of benefits identified by the Band, the Indian Self–Determination and Education Assistance Act, §§ 102–104, 25 U.S.C. §§ 450f, 450g, 450h (1982), would mandate the payment of money to eligible Indian Tribes if arbitrarily denied,[5] the denial of benefits to the Band resulting from the improper termination of the Band's federal status as eligible Indians could result in damages which would periodically accrue for as long as the tribe's status remained unlawfully terminated. Thus, unlike the breach of trust associated with the sale of Parcel 1, the third count of the Band's complaint could be construed as presenting a damage claim where the doctrine could be applicable.

◼ Thus, if the "continuing claim" doctrine were deemed applicable to the present facts, the Band's suit could be maintained as to those denied statutory benefits which the Band could have applied for within 6 years of the filing of its complaint of September 1986. However, the "continuing claim" doctrine could only have had possible application as long as the underlying wrong remained uncorrected. Here, the

---

4. We need not squarely address that issue because the government has conceded that the termination of the Hopland Rancheria was unlawful, and in fact did so more than 6 years after the termination occurred.

5. *See United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) ("the claimant must demonstrate that the source of substantive law he relies upon ' "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." ' " (citations omitted)).

underlying wrong, the unlawful termination of the Band's tribal status, was corrected when the United States government resumed recognition of a government-to-government relationship with the Hopland Band in April 1980. At that time, the Band regained its eligibility for federal programs administered by the Bureau of Indian Affairs such as the Indian Self–Determination and Education Assistance Act. Therefore, April 1986 was necessarily the latest that a claim seeking recovery for any of the benefits that were wrongfully withheld by the government on the basis of the unlawful termination which ended in April 1980 could have been filed without being foreclosed by section 2501. Since the present complaint was filed on September 3, 1986, it was untimely.

Thus, although the analysis is somewhat different from that for the first two counts of the Band's complaint, we nevertheless must still reach the same conclusion with respect to the third count of the Band's complaint: the recovery of damages for statutory benefits wrongfully denied as a result of the wrongful termination of the Hopland Rancheria is time-barred under section 2501. Moreover, any statutory benefits which were not received by the Band in the period since April 1980 either were never applied for or were denied by the Secretary for reasons unrelated to the unlawful termination of the Band's eligibility; however, this court cannot reach such issues since the Band's complaint contained no allegations of an unlawful or arbitrary denial of statutory benefits for reasons unrelated to the unlawful termination of its federal status.

## CONCLUSION

As all three counts of the Band's complaint are time-barred under 28 U.S.C. § 2501, the Claims Court was correct in dismissing the Band's complaint. However, since compliance with section 2501 is necessary in order for the Claims Court to have jurisdiction of the complaint, we vacate the Claims Court decision and remand with instructions to dismiss for lack of jurisdiction under section 2501.

## COSTS

Costs on appeal are assessed against the appellant, Hopland Band of Pomo Indians.

**VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS FOR LACK OF JURISDICTION.**