**Ruth Kerr JAKOBY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–216L.**

United States Court of Federal Claims.

June 23, 1997.

Ruth Kerr Jakoby, Chevy Chase, MD, pro se.[1]

Lewis S. Wiener, United States Department of Justice, Washington, DC, for defendant. Anne C. Gamson, United States Army Corps of Engineers, Phoenix, AZ, of counsel.

## OPINION

BRUGGINK, Judge.

This takings case alleges that the United States physically restricted all access to the plaintiff's patented mining claims, which are wholly located within the boundaries of the Yuma Proving Ground—a military testing facility run by the United States. Specifically, the plaintiff claims that the Government denied access to her mining claim (1) by failing to maintain an adequate road across the Yuma Proving Ground and (2) by conducting land-mine tests in undisclosed "off-road" areas of the Yuma Proving Ground, which constructively prevented access to the mining claim. The matter is presently before the court on the defendant's motion for summary judgment and the plaintiff's motion

for declaratory judgment. Oral argument is not deemed necessary.[2] For the reasons discussed below, the Government's motion is well taken.

### Background

On or about June 20, 1975, the plaintiff, Ruth Kerr Jakoby, acquired a one-half interest in certain property and patented mining claims wholly located within the boundaries of the Yuma Proving Ground (YPG) in Arizona. The YPG is operated by the Government as a facility for various military projects, including the testing of explosives and other munitions. At the time Ms. Jakoby acquired her interest, the YPG was being openly operated for such military testing. On December 6, 1985, Ms. Jakoby assigned one-third of her one-half interest in the Copper Chief Mine ("Copper Chief"), an undeveloped mine located on the property in question, to Northern Virginia Law School.[3]

In 1982, Ms. Jakoby entered into lease DACA09–5–82–152 with the United States, through the Department of the Army Corps of Engineers. The lease covered "Tract 317," within which the Copper Chief is located, and expressly permitted the plaintiff to develop mining claims upon the subject property but allowed the Government to periodically order the property vacated upon seven days notice. The Government paid $1200.00 per year for the restriction and other rights on the property, but never actually required the property to be vacated during the lease term. On July 28, 1985, the Government's lease of plaintiff's property expired and was not renewed.

Ms. Jakoby initiated the present action on April 22, 1996, alleging a taking under the Fifth Amendment to the United States Con-

1. The court notes that, although the plaintiff is proceeding *pro se*, she holds a juris doctor degree from Northern Virginia Law School. She has further represented to the court that she once served as acting dean of the Antioch School of Law.

2. Defendant previously moved to dismiss on substantially the same grounds. Oral argument was held November 26, 1996. At that time, the court denied the motion to dismiss and suggested that defendant file a motion for summary judgment.

3. It is not clear to the court, at this point in the litigation, who owns the remaining interests in the subject property. The Government has raised the possibility that indispensable parties may be absent from this proceeding. However, because the court finds that no taking claim has been stated by the plaintiff, it is unnecessary to further address this issue.

stitution. Because of initial concerns about the timeliness of Ms. Jakoby's claims, the court, by its Order of April 25, 1996, requested that the plaintiff file an amended complaint "to specifically allege the events that constituted a taking, and to furnish the court in the amended complaint with the plaintiff's best understanding of when those events occurred and when she learned of those events." Plaintiff filed her amended complaint on May 14, 1996, claiming that her property rights in the Copper Chief Mine were taken by the Government through its failure to provide or allow meaningful access to the site. Specifically, Ms. Jakoby complains that there is not an adequate roadway by which she can access her mine. This lack of adequate passage allegedly prevents her from developing the full potential of the mine's resources because mining equipment cannot be driven in and out of the property. The absence of a complete roadway allegedly requires plaintiff to proceed on foot for "at least a mile" in order to gain access to her property. In addition, the air space above the YPG is restricted, which allegedly prevents the use of helicopters for moving equipment.[4] Such lack of access, she claims, amounts to a taking of her property for which she is entitled to just compensation. Her amended complaint was imprecise as to a date that the "taking" was complete.

To satisfy both the court's, and defendant's, statute of limitations concerns, Ms. Jakoby complains—for the first time in her response to the Government's motion for summary judgment—that it is unsafe to cross the YPG "off-road" because of the possibility of unexploded land-mines. Ms. Jakoby argues specifically that a 1991 land-mine test conducted at the YPG by the Government—the details of which were allegedly never disclosed to Ms. Jakoby—made it constructively impossible for her to access her property. Such a constructive denial of access to her property, she asserts, is a taking for which she should be compensated.

For its part, the Government responds that it has not taken any action whatsoever with respect to plaintiff's property since its lease expired in 1985. It submits affidavits from three YPG officials as evidence that the plaintiff now has, and has had since 1985, full and complete access to her property within the YPG. The Government, relying on these affidavits, argues that no event sufficient to state a claim for a taking has occurred within the applicable six year statute of limitations period, and that land-mine tests conducted during 1991 at the YPG in no way endangered Ms. Jakoby or inhibited her access to the Copper Chief. The Government's stated position is that it does not want possession of the Copper Chief and that Ms. Jakoby is free to develop the property as she wishes.

## Discussion

■ Pursuant to 28 U.S.C. § 2501 (1992), "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The plaintiff's complaint was filed on April 22, 1996. Thus, any claim that first accrued prior to April 22, 1990, cannot now be heard by this court. "A cause of action first accrues when 'all the events which fix the government's liability have occurred and the plaintiff was or should have been aware of their existence.'" *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399. 405 (1994) (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir. 1988)).

■ The plaintiff asserts that a taking has occurred because there is not an adequate road or passage across the YPG by which to access the mining property. However, there is no evidence that there ever was such a road, or any rational expectation that the Government would provide such a road. Ms. Jakoby represents that she did not know that the mine was located within the YPG when she purchased the rights to the property in 1975. Accordingly, any investment-backed

---

4. In her response brief, Ms. Jakoby makes numerous references to the fact that former President George Bush recently made a widely-reported parachute jump at the YPG and was allowed to fly over the restricted airspace to his jump site—airspace that Ms. Jakoby says she may not utilize. However, there is no evidence, and Ms. Jakoby has not argued. that she has ever requested use of the airspace above the YPG for access to her mining claims.

expectations that were held by the plaintiff involved mere speculation regarding the availability of access to the property. There is also no evidence that, subsequent to her purchase, she has ever asked the Government for permission to build such a road or asked the Government to build, or assist her in building, a road to the mining property.

In any event, Ms. Jakoby admits that she learned of the alleged difficulty in accessing her property sometime in the 1970s, shortly after her purchase. Thus, without addressing the merits of the plaintiff's claim of entitlement to a Government-provided roadway, the court holds that such a right of access, if it existed, was denied more than six years prior to the filing of plaintiff's complaint.

In a previous brief, addressing the Government's failed motion to dismiss, plaintiff asked that the statute of limitations be tolled because of concealment by the Government of "secret actions" and the resulting unknowability that a compensable takings claim had accrued. Plaintiff has reasserted this argument in briefing the present motion, but the court holds that there is no credible evidence to support such an assertion.

■ For this court to toll the statute of limitations, the plaintiff must demonstrate that the Government "has concealed its acts with the result that plaintiff was unaware of their existence or that [the] ... injury was 'inherently unknowable' at the accrual date." *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356, 359, *cert. denied* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). Under this standard, the subjective interpretations of the facts by the plaintiff do not matter and ignorance of a claim cannot, alone, form the basis for tolling. *Catellus,* 31 Fed. Cl. at 405 (citing *Coastal Petroleum Co. v. United States,* 228 Ct.Cl. 864, 866 (1981)). In *Catellus,* the court directed that " '[w]here the actions of the government are open and notorious, we have pointed out that plaintiff is on

inquiry as to its possible injury. Once plaintiff is on inquiry that it has a potential claim, the statute of limitations begins to run.' " *Id.* (quoting *Coastal,* 228 Ct.Cl. at 867).

■ The conditions that allegedly constitute a taking, the lack of an adequate road or passage, were admittedly known to the plaintiff from the first time she visited her property in the 1970s. The absence of a road or other passage was "open and notorious." Plaintiff admits that essentially nothing has changed regarding access to the property since either 1975 or 1985. Rather, in her own words, "What has changed is that [Ms.] Jakoby wants to either sell the mine or arrange for further development." She alleges it was not until she decided to sell the property or further develop it that she became aware of the taking. However, absent inherent unknowability or concealment, neither of which have been shown here, "ignorance of the facts will not toll the statute of limitations." *Bennett v. United States,* 36 Fed. Cl. 111, 113 (1996). Accordingly, the court declines to toll the running of the limitations period.

■ The remaining question is whether the complaint, as amended, alleges any event within the six-year limitations period that might constitute a taking, and whether the Government is entitled to summary judgment on that claim. In her response to the Government's motion, the plaintiff asserts that the possibility of unexploded ordnance, and particularly a land-mine test at the YPG in 1991, prevented all access to the property in question. Ms. Jakoby claims that because the details of the test were never made available to her, she could not be sure that there were not unexploded land-mines in the off road areas surrounding her property.[5] Because of her lack of information, Ms. Jakoby asserts that she was denied safe and reasonable access to her property and thus constructively denied all access.

---

5. To the extent that the plaintiff complains only generally of the possibility of unexploded ordnance upon the YPG, which she says is supported by the warning signs she observed in 1987, such claims are untimely. Ms. Jakoby admits that she saw these warning signs in 1987, more than six years prior to the filing of her complaint in this matter. Ms. Jakoby has not alleged that the Government ever made a secret of the fact that the YPG was being actively used for testing military explosives and other munitions.

As proof of the land-mine testing, Ms. Jakoby offers the affidavit of Katherine McGeehon, a retired public employee of California whose connection to this case is unclear. The Government correctly points out that Ms. McGeehon's testimony does not indicate any actual knowledge of the tests. Rather, she refers only to hearsay statements allegedly made to her by a physicist who helped conduct the tests. Accordingly, Ms. McGeehon's affidavit is of limited value.

In any event, the Government, in its reply brief, admits to the testing of land-mines at the YPG in 1991. The Government offers the affidavits of Richard Albert, Test Director and Project Engineer for YPG, and Eusebio Lopez, a mechanical engineer at YPG, both of whom allege personal knowledge of the land-mine tests to which Ms. Jakoby apparently refers. These affidavits indicate that the tests were conducted with unfused mines and in locations remote from Ms. Jakoby's property. Thus, the Government argues, there was never any danger to Ms. Jakoby and no corresponding need to notify her of the test details. The affidavits indicate that even though one test was conducted "at least" one mile from Cibola Lake Road, there was no danger to civilian traffic on that road and thus the road was not closed. Mr. Lopez states that he has personal knowledge that civilians did in fact use Cibola Lake Road concurrently with the testing activities. The affidavits indicate that the only other land-mine testing in 1991 occurred at least thirty miles from Ms. Jakoby's mining claims.

■ In further response to the Government's affidavits, Ms. Jakoby has offered a video taped interview of Donald M. Burt, a Professor of Geology at Arizona State University. The Government objects to this video tape because Professor Burt's statements are not made under oath and under penalty of perjury. The court agrees that the plaintiff's submission does not comply with Appendix H and Rule 56(f) of the Rules of the Court of Federal Claims. Accordingly, plain-

tiff's motion for leave to file the video tape is denied. The court notes, however, that even if it were to accept the video-taped interview of Professor Burt, there is no indication in that interview that Ms. Jakoby was ever physically denied access to her property because of the land-mine testing at the YPG. Although Professor Burt points out that a possible route to plaintiff's property "might" have taken her into, or at least close to, the land-mine field, his statements do not indicate that she was denied full access to her property. Professor Burt admits that he has not been to the property at issue, or attempted to access the property, since 1976.

Ms. Jakoby argues that her lack of information translated to a rational fear of entry onto the YPG.[6] This lack of information, she asserts, made it reasonable to assume that she could not cross the YPG off-road to gain access to her property. However, Ms. Jakoby does not allege that she ever asked the Government about the land-mine tests prior to initiating her suit in this court. Indeed, she admits that the Government repeatedly assured her that she had full right of access to her mining claims. Despite these admitted assurances, Ms. Jakoby informs the court that she chose not to believe the Government. Such a choice did not, however, place a burden upon the Government to take additional steps to satisfy Ms. Jakoby. Absent an actual danger to civilian traffic, the Government was under no obligation to inform Ms. Jakoby of its testing activities. She could, at any time, have asked the Government whether its land-mine testing posed any danger to her entry upon the YPG for purposes of accessing her mining claims. She did not, and thus cannot now complain that her fear of crossing into the land-mine test was reasonable.

■ The Government has provided unrefuted evidence that it has not imposed any restrictions on Ms. Jakoby's right to use and access her property within the six years prior to the filing of her claim. The plaintiff has not offered evidence that the Government's

6. Ms. Jakoby maintains that she learned of the 1991 land-mine testing from an unnamed physicist who was working on the project, but who had become ill. This physicist allegedly informed Ms. Jakoby that such testing was taking place, but did not know the exact location or whether the mines had been removed.

land-mine testing in 1991 blocked all access to her mining claims at issue. The evidence is that the plaintiff may enter her property at any time without authorization from Governmental authorities at the YPG, and may utilize trucks and explosives to develop her claims. Accordingly, the court finds that no compensable taking occurred.

### Conclusion

The plaintiff's June 2, 1997 motion for "leave of court to file video tape proffer of expert witness' examination of new corroborative evidence given to plaintiff by government May 1, 1997—a map from government with penciled area of land mines—a genuine issue of material fact" is denied. In addition, the court holds that there are no genuine issues of material fact barring entry of judgment for defendant. The plaintiff's first claimed basis for a taking action, that there is not an adequate road to access her property, is untimely because it first accrued, if at all, sometime prior to April 22, 1990. The failure of the Government to inform the plaintiff about the 1991 land-mine tests did not amount to a compensable taking because there is no evidence that the land-mines were a physical barrier to plaintiff's access of her property. Plaintiff's motion for declaratory judgment is denied. The clerk is directed to dismiss the complaint. No costs.