**Carl B. ADAMS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–933C.**

United States Court of Federal Claims.

June 19, 2000.

Carl B. Adams, Houston, Texas, pro se.

Matthew P. Reed, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

## OPINION ON DEFENDANT'S MOTION TO DISMISS

GIBSON, Senior Judge.

### INTRODUCTION

Plaintiff in this case, Carl B. Adams, asserts a Fifth Amendment takings claim against the United States in the amount of 39 million dollars ($39,000,000), constituting his lost earnings as an architect because of the Department of Veterans Affairs' ("the VA") alleged failure to pay approximately $356.00 in education benefits for a correspondence course plaintiff began but discontinued in 1974. Plaintiff filed his initial complaint on November 12, 1999, and amended such on November 30, 1999. Defendant filed the instant motion to dismiss on February 14, 2000, averring, *inter alia*, the court's lack of jurisdiction because of the expiration of the statute of limitations period on plaintiff's claims. For the reasons set forth herein, the court grants defendant's motion.

### BACKGROUND

Plaintiff served in the United States Army from January 26, 1962 to January 24, 1964, at which time he was honorably discharged. Because of his service, plaintiff became entitled to education benefits which are administered by the VA under the Veterans' Educational Assistance Program. 38 U.S.C. Ch. 34.

Nearly ten years subsequent to his discharge, plaintiff enrolled, on January 12, 1974, in a correspondence course on architectural drafting given by the Commercial Trades Institute ("the school"), which consisted of fifty lessons at a cost of $9.90 each for a total of $495.00. Plaintiff received notice of his education award, by letter, on March 30, 1974. In this same letter, plaintiff was informed that he would receive benefits totaling ninety percent of the tuition, payments to be made to him quarterly for lessons he actually completes. Apparently, plaintiff was dissatisfied with the reimbursement procedure and, on April 4, 1974, sent a letter to the VA regional office ("VARO") in Houston, Texas, stating the following:

> I received your letter dated March 30, 1974. I must say that the terms are not the ones that appear on my contract and appear to be some kind of con game. Every benifit [sic] that I have applied for has turned out to be a lie. I will not appeal as it would obstruct my activity in the course. It was also explained to me when I would receive my first payment, supposedly at the end of March ... now you tell me that I must wait three more months. *No you keep it and I will send the school all of the materials as I have no intentions of dealing with the likes of such. You are violating my constitutional rights.*

(Defendant's Motion To Dismiss The Amended Complaint, at App. 10) (emphasis added).

The procedure whereby the VA reimburses correspondence course tuition at a rate of ninety percent of the established charges for course work completed is prescribed by statute, which is currently still in effect today for this type of educational benefit. 38 U.S.C. Ch. 34 §§ 21.4136, 21.4138, 21.4203. Before the VA will reimburse an awardee for finished course work, it must

receive completed certification cards from the school. *Id.* These certification cards are VA generated and first sent blank to the awardee, who then forwards it to the school to be filled out. *Id.* As courses are completed, the school fills out the cards and sends them back to the awardee, who then must forward the completed cards to the VA for the prescribed reimbursement. *Id.*

For reasons not entirely clear in the papers submitted to the court, plaintiff never received blank certification cards from the VARO after he sent the April 4, 1974 letter to them. Plaintiff claims he subsequently sent a letter, on April 11, 1974, expressing his intent to complete the course. Additionally, plaintiff claims the school sent letters to the VARO, on April 4 and April 18, 1974, informing the VARO that plaintiff intended to complete the drafting course. Interestingly, the VARO is in possession of a July 17, 1974 letter from the school certifying that plaintiff was enrolled there and had completed ten lessons, but the latter admonished the VARO of the fact that neither plaintiff nor the school received blank VA certification cards. Defendant claims that the VARO did not receive this letter until October 30, 1978, *over four years later.* Whether this is true or not will likely remain as one of the mysteries of this case.

In accordance with its procedure, the VARO processed plaintiff's reimbursement, pursuant to the school's July 17, 1974 letter, for ten lessons completed and sent him $89.10 (.90 X $99.90 (ten lessons)) of reimbursement monies, in March of 1979. Plaintiff does not dispute this payment. Defendant claims that it did not receive any other notice of plaintiff's completion of course work, except the July 17, 1974 letter received on October 30, 1978.

Nothing happened with regard to plaintiff's educational benefits after March of 1979, until May 8, 1986, when plaintiff's Disabled American Veterans Officer, Bruce Burgess ("Burgess"), requested equity relief from the VA for plaintiff pursuant to 38 U.S.C. § 503, which authorizes the Secretary of Veterans Affairs to give relief to those who have suffered loss of VA benefits because of administrative error by the federal government. Burgess' contention on behalf of plaintiff was that because of VA administrative error, plaintiff did not receive his education reimbursement in 1974 and was thus deprived of benefits under the Veterans' Educational Assistance Program.

On April 8, 1988, Burgess' request on plaintiff's behalf was denied by the VARO and plaintiff was informed of such by letter. The letter cited a lack of evidence that plaintiff was due any more than the $89.10 that was already reimbursed to him, albeit untimely. Plaintiff's papers, as well, reflect this absence of evidence concerning any additional course work plaintiff completed which would entitle him to additional reimbursement.

After the April 8, 1988 denial, plaintiff did nothing for nearly three years regarding his education benefits, until March 1, 1991, when Disabled American Veterans Officer, Larry Geddie ("Geddie"), requested, on behalf of plaintiff, a personal hearing concerning plaintiff's non-receipt of certification cards for the lessons he had completed. Such hearing was held by the VARO on March 29, 1991, and plaintiff, who was represented at the hearing by Geddie, testified before a three person panel. The VARO issued a decision on the hearing, on June 18, 1991, denying plaintiff's claim for compensation.

Plaintiff subsequently appealed the June 18, 1991 decision, which was then dismissed by the Board of Veterans Appeals on April 29, 1994. On August 22, 1994, plaintiff filed a petition with the United States Court of Appeals for Veterans Claims for extraordinary relief, requesting money damages of 13 million dollars. The court denied his petition on August 29, 1994 and, shortly thereafter, denied plaintiff's motion for reconsideration thereof. A second petition by the plaintiff for the same relief was dismissed by the U.S. Court of Appeals for Veterans Claims on March 29, 1995.

Plaintiff filed this instant complaint on November 12, 1999, and subsequently amended such on November 30, 1999. Defendant filed its instant motion to dismiss on February 14, 2000, which plaintiff opposed by motion on March 13, 2000. Defendant responded to

such opposition on March 27, 2000. Because the statute of limitations precludes this court's jurisdiction, it is unnecessary to address other bases for dismissal, including dismissal on the merits.

## DISCUSSION

### A. MOTION TO DISMISS—STATUTE OF LIMITATIONS

 The government seeks to dismiss plaintiff's claims on the grounds of lack of subject matter jurisdiction, *i.e.,* 28 U.S.C. § 2501, and pursuant to the rules of this court, particularly RCFC 12(b)(1), because plaintiff's claims violate the six-year statute of limitations. The six-year time bar on actions against the United States is "a jurisdictional requirement attached by Congress as a condition on the government's waiver of sovereign immunity." *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir.1988). Because the statute of limitations affects this court's subject matter jurisdiction and power—rather than being an affirmative defense—the requirement is strictly construed and under no circumstances may it be waived by the court. *Laughlin v. United States,* 22 Cl.Ct. 85, 99 (1990), *aff'd,* 975 F.2d 869, 1992 WL 164266 (Fed.Cir.1992); *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). If the motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional *facts* in the complaint, the court may look beyond the pleadings to consider all available evidence in order to determine jurisdiction. *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991). Similarly, if the court has doubts regarding jurisdiction, it may look at all the evidence presented to satisfy itself regarding the jurisdictional facts. *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir.1998). Accordingly, mindful of plaintiffs' burden to establish the jurisdiction of this court as well as our own duty to ensure the legitimacy of our jurisdiction, we consider all the evidence presented for this court's consideration in evaluating the government's motion to dismiss.

 To prove that his claim is not time-barred, plaintiff *must* establish that its cause of action first accrued within six years of the filing (*i.e.,* November 12, 1999) of the complaint, or November 12, 1993. *LaMear v. United States,* 9 Cl.Ct. 562, 569 (1986), *aff'd,* 809 F.2d 789 (Fed.Cir.1986). Under this threshold analysis, a claim first accrues when "all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." *Hopland,* 855 F.2d at 1577. Stated differently, a claim has accrued when the last event transpires that gives plaintiff a cause of action.

 The court interprets plaintiff's alleged claim as a Fifth Amendment takings action stemming from the VA's failure to give him his educational benefits, to wit, $356 for a correspondence course in drafting. The court can discern no other legal or equitable grounds supporting plaintiff's claim from the four corners of his complaint. As such, and on this record, plaintiff's claim first accrued at the time the VA *should* have given him his educational benefits but neglected to do so.

As stated above, plaintiff was entitled, under applicable law, to ninety percent monetary reimbursement for lessons he had actually completed in the correspondence course he was taking. By plaintiff's own admission, the VA "failed to fulfill statutory obligation[s] by not timely providing IBM certification cards, [and] not paying immediately the month after certification by the school (7/17/74) . . . ." In other words, plaintiff was due and owing the monetary benefits, for the ten course lessons completed, on August 17, 1974. Clearly, all events which gave plaintiff a cause of action for educational benefits due but not paid had transpired by August 17, 1974. *Id.* Since August 17, 1974 is more than twenty-five (25) years before the date plaintiff filed this claim, November 12 or 30, 1999, it necessarily falls outside of the limitations period. Plaintiff, however, avers various grounds which he claims should toll the statutory limitations period, allowing his claim to be timely. The following discussion addresses these grounds.

### B. TOLLING OF THE STATUTE OF LIMITATIONS

As this court has deciphered from his filings, plaintiff has raised three separate

grounds that could validly support his contention that the statute of limitations period should be tolled in this case, to wit: i) the continuing injury doctrine; ii) exhaustion of administrative remedies; and iii) equitable tolling. As will be explained below, the court holds that none of these grounds are supported by the facts of this case and that, as such, the statute of limitations is not tolled. We address each ground seriatim.

i) *Continuing Injury*

■ Plaintiff alleges that the VA engaged in a process of a continuous taking of his property, *i.e.,* his rights to educational benefits, and, therefore, the statute of limitations period should be tolled in this case. The Supreme Court first expressed the standard for the continuous injury rule in *United States v. Dickinson,* stating that:

> All that we are here holding is that when the Government chooses ... to bring about a taking by a continuous process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really "taken."

331 U.S. 745, 749, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947).

In further explaining this doctrine the United States Claims Court (this court's predecessor) held that for the statute of limitations to be tolled under a continuous injury theory, "the material facts [must] embrace a sequence of actions over an extended time period, and include events which, in other contexts, may have been adequate to supply foundations for distinct takings claims." *Juda v. United States,* 6 Cl.Ct. 441, 449 (1984). Plaintiff himself even cites this case but fails, however, to grasp its meaning.

The language above clearly indicates that the VA's one-time failure to pay monies and distribute entitlement documents certainly does not "embrace a sequence of actions over an extended time period" as plaintiff argues. *Id.* Accordingly, plaintiff's underlying claim against the United States does not constitute "foundations for distinct takings" and, therefore, his action against the government, being fully accrued by August 17, 1974, was not a continuing injury to him caused by continuing action on the part of the government. As such, the statute of limitations cannot be tolled by this theory.

ii) *Exhaustion of Administrative Remedies*

Plaintiff alleges that, because he pursued certain administrative remedies with the VA, the statute of limitations should be tolled to such an extent that his twenty-five (25) year old claim is still timely. The argument in support of this premise fails for two separate reasons.

■ First, the pursuance of administrative remedies will suspend or toll the statute of limitations only when exhaustion of such is a prerequisite to filing an action. *Rogers v. United States,* 6 Cl.Ct. 829, 833 (1984). Plaintiff has not demonstrated, nor can the court find, any authority which mandated plaintiff to pursue the aforementioned administrative remedies prior to filing this instant lawsuit. Accordingly, plaintiff's argument that the statute should be tolled because of his pursuance of administrative remedies with the VA fails for this reason alone.

Secondly, plaintiff did not even pursue an administrative remedy until May 8, 1986, when Burgess, his VA officer, filed a request for equity relief on plaintiff's behalf. This event occurred almost twelve (12) years after the date plaintiff's claim first accrued, well outside of the statute of limitations. So even if plaintiff's pursuance of administrative remedies would toll the statute of limitations, his initiation of such occurred too late to sufficiently toll the statute to keep this action alive. Accordingly, considering the above two reasons, this court holds that the statute of limitations for this action is not tolled by plaintiff's pursuance of administrative remedies.

iii) *Equitable Tolling*

Finally, plaintiff's filings aver a third ground supporting his position that the applicable statute of limitations should be suspended, *i.e.,* equitable tolling. Plaintiff's arguments in support of equitable tolling are best described as excusable failure and legal disability. For reasons explained below, the

court rejects plaintiff's arguments and holds that the statute of limitations in this case should not be equitably tolled.

■■■ The doctrine of equitable tolling "permits a court to forgive a late filing where compelling circumstances indicate that such a result would be equitable. Equitable tolling will not, however, extend to garden variety claims of excusable neglect." *Lombardo v. Secretary of Health And Human Services*, 34 Fed.Cl. 21 (1995) (*quoting Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). Federal courts have only sparingly applied this doctrine and have refused to do so where a plaintiff has failed to exercise due diligence in pursuit of its claim. *Id.*

Plaintiff argues that, because of his "blameless ignorance," the statute of limitations in this case should be tolled for twenty-five (25) years. Plaintiff's Motion To Amend Motion For Order To Dismiss Defendant's Motion To Dismiss Plaintiff/Veteran's Complaint, filed March 21, at 6. He supports this position by arguing that the military never provided him with information regarding his rights to the outstanding claim and that, therefore, his ignorance of his claim is "blameless." *Id.* As mentioned above, the court understands this argument as one for either a finding of legal disability and/or excusable failure. Each is discussed below seriatim.

■■■ To establish the excuse of legal disability in order to toll the running of the statute of limitations, plaintiff must show that he suffered a disability which prevented him from pursuing his claims. "[C]ourts are reluctant, however, to recognize legal disability, and will do so only after careful scrutiny. In short, only a serious impediment can toll the running of the statute [of limitations]. Hardship, inconvenience, or ignorance cannot serve as grounds for tolling the statute. Moreover, the burden is heavy because the law presumes sanity and competency." *Coon v. United States*, 30 Fed.Cl. 531, 538 (1994) (*citing Goewey v. United States*, 222 Ct.Cl. 104, 112, 612 F.2d 539 (1979)).

■■■ Plaintiff has failed to provide the court with sufficient proof entitling him to a finding of a tolling of the statute because of a disability. He has not identified any concrete impediment that prevented him from timely pursuing his claim in court. Plaintiff merely states in his papers that he did not receive enough information from the government regarding his rights under the law. Furthermore, plaintiff totally fails to identify any actual physical or mental incapacitation which would, in any reasonable way, have prevented him from pursuing his claim. Therefore, the court is constrained to hold that plaintiff was not under any disability which would entitle him to a tolling of the statute of limitations.

■■■ Additionally, plaintiff also cites *Mitchell v. United States* for the proposition that the limitations period should be tolled because of excusable failure. 13 Cl.Ct. 474 (1987). Excusable failure will toll the statute of limitations "where the events that occasion a redressable injury could not have been uncovered in the exercise of due diligence." *Id.* at 477. Therefore, only where the underlying wrong is deliberately concealed or the facts establishing the injury are inherently unknowable at the time the injury first occurs will the failure to pursue a claim be tolled as an excusable failure. *Id.*

■■■ Plaintiff's injury does not come close to meeting this standard. The government's alleged failure to fully and totally reimburse him was neither deliberately concealed nor inherently unknowable. Indeed, plaintiff concedes himself, in his filings, that he knew in August of 1974 that he had not been reimbursed and was owed money by the government. What plaintiff is confusing is the difference between knowing he was not paid and knowing the *reason* why he was not paid. The reason why he was not paid, which we will probably never know, is irrelevant. What the *Mitchell* decision speaks to is the injury itself, not the cause of it. Plaintiff fully knew of the injury and did not employ due diligence to pursue redress in this court until twenty-five (25) years later. As such, this court rejects plaintiff's argument that excusable failure should equitably toll the statute of limitations in this case.

## CONCLUSION

Defendant requests this court to dismiss plaintiff's claim because it falls outside of the statute of limitations. This court finds defendant's position highly persuasive because there has been over a twenty-five (25) year inexcusable delay between the date plaintiff's claim first accrued, August 17, 1974, and the date on which he filed this instant action, November 30, 1999. Such delay is obviously prejudicial to defendant. Additionally, plaintiff has shown no grounds, either legal or equitable, which would entitle him to a tolling of the statute of limitations.

The overwhelming evidence herein justifiably disposes of this case in its entirety, as a matter of law, based on failure to satisfy the statute of limitations. There also are other issues bearing on dismissal that could have been discussed, which would have equally disposed of this case.[1] However, we do not reach these issues because the foregoing holding is dispositive of this case with prejudice.

Therefore, the government's motion to dismiss all claims, premised on the statute of limitations, is hereby GRANTED. The Clerk shall enter judgment pursuant to RCFC 58, dismissing plaintiff's complaint in its entirety and with prejudice. No costs.

IT IS SO ORDERED.

---

1. Some of these grounds for dismissal include, but are not limited to: laches; failure to state a claim for which relief can be granted; inapplicability of Fifth Amendment takings law to these facts; part of plaintiff's request for relief are outside of the Court of Federal Claims' jurisdiction under the Tucker Act; and the money damages plaintiff prays for is highly speculative.