NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL GRAVES, SUE ANN GRAVES,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-2182

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01464-CNL, Judge Carolyn N. Lerner.

---

Decided:  August 12, 2024

---

A. BLAIR DUNN, Western Agriculture, Resource and Business Advocates, LLP, Albuquerque, NM, argued for plaintiffs-appellants.

EZEKIEL PETERSON, Appellate Section, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by THEKLA HANSEN-YOUNG, TODD KIM.

---

Before CUNNINGHAM, BRYSON, and STARK, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

Michael Graves and Sue Ann Graves (collectively, "Graves")[1] appeal from the judgment of the United States Court of Federal Claims granting the government's motion to dismiss the complaint because the action is time-barred by the six-year statute of limitations. *Graves v. United States*, 160 Fed. Cl. 562 (2022) ("*Decision*"). For the reasons discussed below, we *affirm*.

## I.   BACKGROUND

Graves owns property (the "Graves Property") in Colorado surrounded by the Rio Grande National Forest. *Decision* at 565; J.A. 19, 21–23, 91. In the past, the Graves Property has been accessed via a United States Forest Service ("Forest Service") Forest Road (FR 252) and its offshoot road (FR 252 1B), which are both on federal land. *Decision* at 565; J.A. 19–20.

In 1996, Mr. Graves's mother, Margritte Lindsey, signed a "Private Road Easement" with the Forest Service. *Decision* at 565; J.A. 76–81. The easement recognized that the Forest Service owned FR 252 1B and granted Ms. Lindsey nonexclusive use of this offshoot road to access the Graves Property in exchange for an annual fee. *Decision* at 565, 572; J.A. 76–81.

In 1999, Graves acquired the Graves Property. *Decision* at 565; J.A. 30. Sometime after 2009, the Forest Service declared FR 252 1B a "system" road and installed a

---

[1]   Although together Michael Graves and Sue Ann Graves are the Graveses, we refer to them collectively as Graves for ease of reference throughout this opinion.

"FR 252 1B" sign on it.[2] *Decision* at 566; J.A. 24. On September 26, 2011, Graves signed a "Private Road Easement Issued Under the Federal Land Policy and Management Act." *Decision* at 566; J.A. 83–91. The easement, dated January 4, 2012, included similar terms and restrictions as the easement Ms. Lindsey had signed in 1996. Specifically, it also recognized that the Forest Service owned FR 252 1B and granted Graves nonexclusive use of the road in exchange for an annual fee that was slightly higher than the one in the easement Ms. Lindsey had signed. *Decision* at 572. *Compare* J.A. 76–81, *with* J.A. 83–91.

On June 11, 2021, Graves filed his complaint with the Court of Federal Claims, alleging "the Defendants have taken property from [Graves] within the meaning of the Fifth Amendment of the United States Constitution and the Tucker Act, 28 U.S.C. § 1491." J.A. 19. Specifically, Graves alleged that "[t]he Forest Service requirement that Mr. Graves maintain an easement, pay fees, and the requirement of a special use permit, and allowing other landowners to use Mr. Graves['s] private easement constitutes a taking under the Fifth Amendment of the United States Constitution." J.A. 25; *Decision* at 567; *see also* J.A. 18–33. The government later filed a motion to dismiss, arguing that Graves's complaint was barred by the six-year statute of limitations for claims brought before the Court of Federal Claims. *Decision* at 565; J.A. 16; *see also* 28 U.S.C. § 2501. The Court of Federal Claims granted the motion, finding that "the action was brought beyond the statute of

---

[2]    The Federal Land Policy and Management Act grants the Forest Service authority to manage, among other things, the "roads, trails, [and] highways" for "lands within the National Forest System." 43 U.S.C. § 1761(a)(6); *Decision* at 565–66. Roads within the National Forest System may be referred to as "system" roads. *See Decision* at 565–66.

limitations." *Decision* at 565, 574. The Court of Federal Claims did not address the merits of the alleged property interest of Graves. *Id.* at 568.

Graves timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.  STANDARD OF REVIEW

"We review de novo a grant or denial of a motion to dismiss for lack of jurisdiction." *Hopi Tribe v. United States*, 782 F.3d 662, 666 (Fed. Cir. 2015). "The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Diaz v. United States*, 853 F.3d 1355, 1357 (Fed. Cir. 2017). "If a Rule 12(b)(1) motion challenges a complaint's allegations of jurisdiction, the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true." *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). "In resolving these disputed predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings." *Id.* (cleaned up).

## III.  DISCUSSION

The Supreme Court has long interpreted the Court of Federal Claims limitations statute, currently codified at 28 U.S.C. § 2501, as setting forth a "jurisdictional" time limit. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008); *see also Ideker Farms, Inc. v. United States*, 71 F.4th 964, 974 (Fed. Cir. 2023) ("Section 2501's six-year limitation is jurisdictional."). Under 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

On appeal, Graves argues that the government committed a taking and that the takings claim only accrued when the government allegedly disclosed its actions in

2016. *See* Appellants' Br. 4–5. Below we address the timing component of any alleged takings claim and whether the accrual suspension ruling precludes Graves's takings claim from being time-barred.

### A.

We first determine the latest time at which a taking could have occurred. Graves argues that the Forest Service "[took] the Graves property at least as far back as 2012, if not before 2009."[3] *Id.* at 11. Specifically, the 2012 easement contains the very terms Graves now argues constitute a taking. *Compare* J.A. 25, *with* J.A. 83–91. The 2012 easement explicitly states that the government, through the Forest Service, is granting Graves "a nonexclusive easement for use of a road, along and across a strip of land," and that the government reserves "[t]he right alone to extend rights and privileges for use of the road constructed on the premises to other users." J.A. 83, 86. Without addressing the merits of whether there was a taking, we conclude that the latest time at which any alleged taking occurred is by 2012. In other words, "all the events which fix[ed] the government's alleged liability ha[d] occurred" no later than the effective date of the 2012 easement—more than six years before Graves filed suit. *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988).

---

[3] Graves disagreed at oral argument that "any alleged taking occurred no later than 2012" and instead argued that he could not "know when the government decided to take the property." Oral Arg. 01:23–01:47, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-2182_12042023.mp3. However, "[t]his argument was raised for the first time at oral argument and is thus forfeited." *Naterra Int'l, Inc. v. Bensalem*, 92 F.4th 1113, 1117–18 (Fed. Cir. 2024).

B.

Graves argues that even if his takings claim would have otherwise accrued by 2012, the accrual suspension rule should apply because he did not know and should not have known of the claim until the 2016 conversation with Mr. Andrew Peterson, a Forest Service employee. Appellants' Br. 6–9; *see also id.* at 8 (generally citing J.A. 24, where Graves alleges that a November 2016 conversation occurred where Mr. Peterson first communicated that FR 252 1B "was now a forest system road belonging to the federal government"). We disagree that the accrual suspension rule allows Graves to assert his takings claim in this case.

"A cause of action against the government has first accrued 'when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.'" *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Hopland Band of Pomo Indians*, 855 F.2d at 1577 (emphasis omitted)). "The 'accrual suspension' rule is 'strictly and narrowly applied[.]'" *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) (quoting *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985)). "[T]he question whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *San Carlos Apache Tribe*, 639 F.3d at 1350 (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995)). We have repeatedly recognized that "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319.

Even if Graves only acquired actual knowledge of the alleged takings claim in 2016, he should have known of the claim against the Forest Service no later than in 2012, the

effective date of his executed easement.  J.A. 83, 87 (showing Graves's signature).  In *San Carlos Apache Tribe*, we held that a claim accrued upon entry of a consent decree because of "the plain terms of the Decree."  639 F.3d at 1351.  Specifically, because the contested water rights were explicitly delineated in the consent decree, we found that "viewed under an objective standard, the Tribe knew or should have known that the terms of the Decree precluded the Tribe from seeking additional . . . water rights." *Id.* (internal quotation marks and citations omitted).  Here too, Graves's claim is based on terms explicitly stated in the 2012 easement. *Compare* J.A. 25, *with* J.A. 83–91.  Under an objective standard, even if Graves did not possess actual knowledge, he should have known that the claim against the government had accrued no later than 2012.

"For the accrual suspension rule to apply, the plaintiff must either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or [the plaintiff] must show that [his] injury was inherently unknowable at the accrual date." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011) (cleaned up).  "[T]he 'concealed or inherently unknowable' test, which has been used interchangeably with the 'knew or should have known' test, includes an intrinsic reasonableness component." *Id.* at 1320 (citation omitted).  The Court of Federal Claims concluded that Graves "d[id] not demonstrate that the alleged taking was 'inherently unknowable' at the accrual date." *Decision* at 573.

Graves argues that it is error to find that he should have known of the claim in 2012 because he presented to the Court of Federal Claims "undisputed evidence of the statements of the Forest Service that concealed their apparent condemnation on a promise that the Graves retained their property interests despite permits issued by the [g]overnment for the roads." Appellants' Br. 3.  Graves further contends that the Court of Federal Claims failed to properly consider "the intrinsic reasonableness of

[Graves's] reliance upon the statements of the [g]overnment regarding [Graves's] continued private ownership of the right of way easement." *Id.* at 5.  Graves also vaguely alleges that "the [g]overnment engaged in its deception in 2012." *Id.* at 6–7.  The factual allegation Graves relies on to support the concealment argument is the allegation "that in 2012 the Forest Service explicitly said it was not terminating the Graves property interest in their right-of-way consistent with [the Federal Land Policy and Management Act] enacted in 1976." *Id.* at 11; *see also Decision* at 573.  But Graves does not allege that the Forest Service ever stated that Graves's right to use FR 252 1B was exclusive.  Absent such an allegation, even if the Forest Service allegedly stated that the 2012 non-exclusive easement did not terminate Graves's right to use FR 252 1B, the Forest Service's statements are not sufficient to show concealment.  *See* J.A. 83–91.

Graves further asserts that "the accrual suspension rule . . . applies in situations where the plaintiff received 'mixed signals' from the government or where a claim was 'inherently unknowable.'" Appellants' Br. 7 (quoting *Decision* at 572).  Graves contends that he received mixed signals from the government based on the Forest Service's "explicit statement that they were not requiring the surrender of the Graves' private property interest in the road in exchange for either easement agreement in 2009 or the special-use permit in 2012." *Id.* at 8 (footnote omitted).  Graves argues the Court of Federal Claims should have therefore found unreasonable the idea that Graves "should have known" of the taking prior to 2016, when Mr. Peterson first indicated that the offshoot road was a forest system road that was the property of the federal government.  *Id.* at 11; J.A. 24.

To support his mixed signals argument, Graves relies on *Mendez v. United States,* 135 Fed. Cl. 131, 135 (2017) for support, Appellants' Br. 7–8, but the case is neither controlling nor apposite.  *Mendez* does not stand for the

proposition that mixed signals trigger the accrual suspension rule. 135 Fed. Cl. at 135. In *Mendez*, the Court of Federal Claims reaffirmed that "[t]o benefit from the [accrual suspension] rule, plaintiff must show either that his claim was inherently unknowable . . . or that the government concealed its [actions] . . . from him at that time." *Id.* The Court of Federal Claims ultimately held that none of the alleged mixed signals "support[ed] a finding that plaintiff's . . . claim was inherently unknowable . . . or that the government concealed its" actions. *Id.*

The government disputes that the Forest Service "concealed its acts with the result that plaintiff was unaware of their existence." Appellee's Br. 19; *see also id.* at 20–23. The government argues that the presence of comparable explicit language in the 1996 and 2012 easements cuts against Graves's argument. Appellee's Br. 19–20. We agree. Both easements state that the government, through the Forest Service, is granting (1) "a nonexclusive easement for use of a road" (2) "for and in consideration of the payment of an annual use fee," and (3) the government reserves "[t]he right alone to extend rights and privileges for use of the road constructed on the premises to other users." *Compare* J.A. 76, 79, *with* J.A. 83, 86. The only material difference between the 1996 and 2012 easements is the annual fee. *Compare* J.A. 78, *with* J.A. 84. The government further argues that the Forest Service's installation of a sign after 2009 labeling the road "FR 252 1B" was "open and notorious," not "concealment." Appellee's Br. 21–22; *see also Ingrum v. United States*, 560 F.3d 1311, 1315–16 (Fed. Cir. 2009) (reaffirming that "open and notorious" government actions put a plaintiff on inquiry notice of his possible injury and trigger the statute of limitations). We agree that the government is correct; we find no error in the conclusion by the Court of Federal Claims that Graves failed to show that the government concealed its acts. *Decision* at 573.

Graves's other cited cases are also inapposite. For example, unlike in *L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1366 (Fed. Cir. 1982), there is no obligation that the government took upon itself to relieve Graves of a duty to keep himself reasonably informed. And unlike in *Holmes*, 657 F.3d at 1322, Graves has identified no "agreements in which the government promised to take certain action . . . combined with indications that the promised action had been taken" that could reasonably have prevented Graves from discovering the act that gave rise to the takings claim.

Under the requisite objective standard, Graves knew or reasonably should have known of the alleged taking no later than 2012 because he signed the easement in 2011 with a 2012 effective date. Graves has not established that the government "concealed its acts" or that the purported injury was "inherently unknowable" in 2012. *Holmes*, 657 F.3d at 1317. Accordingly, Graves's alleged takings claim accrued more than six years before Graves filed suit and thus is time-barred. *See* 28 U.S.C. § 2501.

## IV. CONCLUSION

We have considered the remaining arguments by Graves and find them unpersuasive. For these reasons, we *affirm* the judgment of the Court of Federal Claims.

**AFFIRMED**

COSTS

No costs.